AT-96-22                                    - 1 -

En el Tribunal Supremo de Puerto Rico

| Ana Alicia Díaz Alvarez<br>      Recurrida<br><br>      V.<br><br>Departamento de Recursos Naturales<br>      Peticionario | Revisión de Agencia<br>Administrativa<br><br>99TSPR7 |
| --- | --- |

Número del Caso: AT-96-22

Abogado del Peticionario Dpto. Recursos Natrales
y Ambientales:                    Hon. Carlos Lugo Fiol
                                  Procurador General
                                  Lcdo. Sigfredo Rodríguez Isaac
                                  Procurador General Auxiliar

Abogado del Peticionario
Empresas Terrasa:                 Lcdo. Michel Rachid Piñeiro
                                  Lcdo. Jorge E. Galvá

Abogado de la Parte Recurrida:Lcdo. Mario Soriano Ressy
                                  Lcdo. Arturo Aponte Parés

Tribunal de Instancia: Superior de San Juan

Juez del Tribunal de Primera Instancia: Hon. Gilberto Gierbolini

Fecha: 1/26/1999

        Este documento constituye un documento oficial del Tribunal
        Supremo que está sujeto a los cambios y correciones del
        proceso de compilación y publicación oficial de las
        decisiones del Tribunal. Su distribución electrónica se hace
        como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ana Alicia Díaz Alvarez

    Recurrida


       v.                            AT-96-22

Departamento de Recursos
Naturales

    Peticionario


Opinión del Tribunal emitida por el Juez Asociado señor Hernández Denton


San Juan, Puerto Rico a 26 de enero de 1999.

El presente caso ha tenido un trámite apelativo confuso como consecuencia de los cambios introducidos en la estructura judicial en Puerto Rico al entrar en vigor La Ley de la Judicatura de 1994. 4 L.P.R.A. secs. 22 et seq. Se trata de un recurso de revisión judicial en donde se impugna la determinación del Departamento de Recursos Naturales de rechazar los argumentos presentados por la señora Ana A. Díaz Alvarez en oposición a la renovación del permiso de extracción de arena en las riberas del Río La Plata solicitada por la compañía Empresas Terrassa, Inc. La señora Díaz Alvarez aduce ante nos que la concesión de la renovación es improcedente a la luz del impacto ambiental que la extracción de arena ha ocasionado en el área y por el hecho de que el Departamento de Recursos Naturales incurrió en varios errores procesales durante la consideración de la solicitud que ameritan

la revocación de la Resolución que, en términos prácticos, autorizó la renovación del permiso. Revocamos.

I.

El pleito original se remonta a 1993 cuando Empresas Terrassa, Inc., una entidad que por varios años ha extraído arena en el valle del Río La Plata, solicitó al Departamento de Recursos Naturales la renovación de su permiso de extracción de arena, originalmente concedido en 1988. En esa ocasión, como parte del proceso de renovación del permiso fueron publicados edictos notificando a la ciudadanía de su derecho a comparecer a las vistas públicas que se realizarían.

El 13 de mayo de 1993, la señora Ana Alicia Díaz Álvarez, propietaria de una finca ribereña en el valle del Río La Plata en la jurisdicción del municipio de Toa Alta, presentó en el Departamento de Recursos Naturales una solicitud de intervención en oposición a la renovación del permiso. En esencia, alegó, que las extracciones de arena, grava y "topsoil" por parte de Empresas Terrassa han resultado en un daño irreversible al sistema natural del río y a la capacidad agrícola del área en donde ubica una finca agrícola de la cual es propietaria. Además, expresó que la situación se dramatiza por el hecho de que el material sustraído no es restituido.

Luego de presentada la solicitud de intervención, fueron realizadas varias vistas ante un Oficial Examinador del Departamento de Recursos Naturales en las que la señora Díaz Alvarez tuvo la oportunidad de comparecer y presentar prueba testifical y pericial. Eventualmente, el Oficial Examinador emitió un informe en el cual recomendó que la solicitud de intervención de

Díaz Alvarez y los argumentos esbozados por ella en contra de la renovación del permiso de extracción de arena fueran declarados no ha lugar. Posteriormente el Departamento de Recursos Naturales acogió el informe del Oficial Examinador y emitió una resolución de conformidad con la recomendación formulada.

Inconforme con esta determinación, Díaz Álvarez presentó un recurso de revisión judicial ante el extinto Tribunal Superior, Sala de San Juan, el 10 de enero de 1995. En esa ocasión, el recurso fue referido al Hon. Juez Gilberto Gierbolini, Juez del Tribunal de Circuito de Apelaciones, para su adjudicación como juez de instancia.[1]

Luego de varios trámites procesales, el 30 de agosto de 1995, el tribunal revisor emitió sentencia mediante la cual revocó la Resolución del Departamento de Recursos Naturales y devolvió el caso a esa agencia administrativa para la continuación de los procedimientos. El archivo en autos de copia de la notificación de la sentencia ocurrió el 19 de septiembre de 1995. Una moción de reconsideración fue acogida por el foro de instancia y denegada el 10 de noviembre de 1995. La notificación de esta determinación ocurrió el 22 de noviembre de 1995.

No conformes con esta determinación, tanto el Departamento de Recursos Naturales como Empresas Terrassa, Inc., acudieron por separado al Tribunal de Circuito de Apelaciones mediante Petición

---

[1] Mediante Orden Administrativa del Juez Presidente del Tribunal Supremo de Puerto Rico de 18 de abril de 1995, enmendada el 6 de junio del mismo año, la solicitud de revisión de Díaz Alvarez fue referida al recién creado Tribunal de Circuito de Apelaciones para ser considerado por los jueces de apelaciones actuando como jueces del Tribunal de Primera Instancia. En cumplimiento de esta orden administrativa, el Juez Administrador de ese foro apelativo distribuyó los casos, recayendo la consideración del presente caso en el Hon. Juez Gilberto Gierbolini.

de Certiorari el 21 y 22 de diciembre de 1995, respectivamente. Ambos recursos fueron consolidados.

Luego de varios trámites procesales, el Tribunal de Circuito de Apelaciones emitió una Resolución mediante la cual ordenó el traslado del recurso a este Tribunal. Resolvió que a la luz de lo dispuesto en la Ley de la Judicatura vigente, carecía de competencia para considerar el recurso de certiorari. A juicio de ese foro, el recurso de revisión judicial presentado originalmente en el Tribunal Superior debió ser referido ante nos, ya que se trataba de una revisión de una decisión administrativa final de una agencia que la ley expresamente disponía que sería considerada por la Sala de San Juan del Tribunal Superior. Concluyó el Tribunal de Circuito de Apelaciones que como a la fecha de vigencia de la Ley de Judicatura, el recurso aún no había sido resuelto por el Tribunal de Primera Instancia, el mismo debió ser referido al Tribunal Supremo de Puerto Rico. Examinemos este planteamiento jurisdiccional.

## II.

La Ley de la Judicatura de Puerto Rico de 1994, _supra._, dispuso que entraría en vigor seis (6) meses después de ser aprobada, salvo los incisos (a) y (b) del artículo 9.0004, los cuales regirían el trámite de los **recursos pendientes** en el Tribunal Superior, **dentro de su jurisdicción apelativa**, al momento de la **aprobación** de la ley. Art. 10.004, Plan de Reorganización Núm. 1 de 28 de julio de 1994. La totalidad de la ley entró finalmente en vigor el **24 de enero de 1995**

Por lo tanto, la presentación del recurso de revisión judicial por parte de Díaz Alvarez, ocurrida el **10 de enero de 1995**, días

antes de la fecha oficial de la vigencia de la totalidad de la Ley de la Judicatura de 1994, estaba regida por las disposiciones jurisdiccionales vigentes en ese momento. Al respecto, la Ley Núm. 132 de 25 de junio de 1968, según enmendada, --la cual confiere jurisdicción al Secretario del Departamento de Recursos Naturales sobre las actividades de extracción de arena, entre otras cosas-- establecía que era el Tribunal Superior, Sala de San Juan, el foro competente para considerar los recursos de revisiones judiciales para impugnar determinaciones emitidas al amparo de la referida ley.[2] Fue conforme al texto de esta ley que Díaz Alvarez acudió al Tribunal Superior Sala de San Juan a cuestionar la determinación del Departamento de Recursos Naturales.

Como señalamos, contrario a la mayoría de las disposiciones de la Ley de la Judicatura, los incisos (a) y (b) del artículo 9.004 entraron en vigor tan pronto fue aprobada. El primero de estos incisos dispuso como medida transitoria que:

> Todo recurso de revisión pendiente ante la consideración del Tribunal Superior sobre decisiones de agencias administrativas, dentro de su jurisdicción apelativa, deberá resolverse dentro del término de seis (6) meses a partir de la **aprobación** de esta ley; disponiéndose, que una vez transcurrido dicho término los asuntos pendientes se referirán para su trámite y resolución al Tribunal Supremo de conformidad con el texto original de este inciso [y] permanecerán en el Tribunal Supremo hasta que

---

[2] Dispone, en parte, el artículo 10 de la Ley Núm. 132de 1968:

(b) Revisión ante el Tribunal Superior -La resolución o decisión que emita el Secretario, luego de celebrada la vista pública o sometido el caso, advendrá final y firme a menos que la parte o partes que resulten adversamente afectadas soliciten su revisión para ante el Tribunal Superior de Puerto Rico, Sala de San Juan, dentro de los treinta (30) días siguientes a la fecha de notificación. 28 L.P.R.A. sec. 215(b).

sean resueltos finalmente. 4 L.P.R.A. sec. 23(f)(a) (énfasis suplido).[3]

Ante el claro mandato legislativo, el recurso de revisión judicial presentado por Díaz Alvarez debió ser resuelto por el tribunal de instancia antes de que expiraran los seis (6) meses desde la aprobación de la nueva Ley de la Judicatura. Estos seis (6) meses se cumplieron el 24 de enero de 1995. El recurso, sin embargo, fue resuelto en agosto de 1995, lo que sin duda ocurrió fuera del término que el legislador prescribió para hacerlo. De este modo, el foro con facultad para considerarlo, expirados esos seis (6) meses, lo era este Tribunal. Así pues, actuó conforme a derecho el Tribunal de Circuito de Apelaciones al referirnos el recurso ante nuestra consideración para su adjudicación final. La sentencia emitida por el Tribunal de Primera Instancia carece, pues, de validez. Compete a este Foro adjudicar el recurso de revisión judicial instado por la señora Díaz Alvarez.

Aclarado el aspecto jurisdiccional, pasemos a la consideración de los méritos del recurso.

### III.

En su recurso de revisión, Díaz Alvarez señala la comisión de seis errores.[4] Estos cuestionan esencialmente lo siguiente: (1) si

---

[3] Esta disposición de la Ley de la Judicatura fue enmendada posteriormente por la Ley Núm. 248 de 25 de diciembre de 1995.

[4] Los señalamientos de error son los siguientes:

Primer Error:

Erró el Honorable Secretario del Departamento de Recursos Naturales y Ambientales, al declarar No Ha Lugar la Intervención en oposición al otorgación del permiso para la extracción de material de la corteza terrestre en el Valle del Toa, a la concesionaria Empresas Terrazas [sic] Inc. [...].

Segundo Error:

erró el Departamento de Recursos Naturales al autorizar la
renovación de los permisos de extracción de arena a pesar de la
evidencia que se presentó a lo largo del proceso administrativo;[5]

---

Erró el Departamento al concluir que [la] parte
interventora no probó su caso, pero simultáneamente señala
que la intervención y peritaje que aportó esta parte
colocó a[l] [...] Departamento en conocimiento y posición
de exigirle al concesionario que cumpliere con un
sinnúmero de requisitos que nunca se les había exigido al
concesionario y que El Departamento reconoció.

Tercer Error:

Erró el Departamento al no permitir la urgente
necesidad de expresión del Departamento de Agricultura en
las vistas Públicas cuando el propio Oficial Examinador
con la anuencia del Honorable Secretario había declarado
HA lugar su intervención y participación.

Cuarto Error:

Erró el Departamento de Recursos Naturales y
Ambientales al no exigir una Declaración de Impacto
Ambiental o una Evaluación Ambiental a la peticionaria
Empresas Terrazas [sic] Inc. como condición previa al
otorgamiento del permiso de extracción considerando la
sencibilidad [sic] de la zona aluvial-agrícola y los
cambios drásticos en el proceso de extracción introducidos
por dicha empresa a través de los años.

Quinto error:

Erró el Departamento al permitir que se procediera la
vista sin la presencia del representante del Interés
Público quien ya había sido designado por el honorable
Secretario para entender en el caso, y representar al
interés público por revestir el mismo un gran interés para
el Pueblo de Puerto Rico.

Sexto Error:

Erró el Departamento [a]l permitir la improcedente
intervención del Sr. Leovigildo Vázquez Iñino, como perito
geólogo de la Parte Peticionaria en claro detrimento a la
Parta Interventora y en abierta contravención a la Ley de
ética Gubernamental.

[5] Los señalamientos de error uno y dos de la peticionaria
pueden resumirse en esta única controversia.

(2) si erró el Departamento de Recursos Naturales al igualmente denegar la intervención del Departamento de Agricultura; (3) si erró el Departamento de Recursos Naturales al no requerir una Evaluación Ambiental; una Declaración de Impacto Ambiental o una Declaración de Impacto Ambiental No Significativo de conformidad con la Orden Administrativa 93-12 del Departamento de Recursos Naturales como condición para la renovación del permiso de extracción de arena; (4) si erró ese foro administrativo al realizar vistas publicas sin la presencia del defensor del interés público que el propio Departamento de Recursos Naturales había nombrado para ese procedimiento; y (5) si la  autorización de la intervención como perito de Empresas Terrassa Inc., del Sr. Leovigildo Vázquez Iñino contravino la Ley de Etica Gubernamental.

Luego de evaluar los escritos de las partes, así como el derecho aplicable, estimamos que la consideración de la controversia en torno a la necesidad de elaborar una Declaración de Impacto Ambiental dispone del recurso ante nos.[6] Así pues, es

---

[6] Los demás señalamientos de error de naturaleza procesal son inmeritorios.

En el tercer señalamiento de error, la señora Díaz Alvarez alega que el Departamento de Recursos Naturales erró al denegar la intervención del Departamento de Agricultura en el procedimiento administrativo. Como puede apreciarse, Díaz Alvarez formula un planteamiento que le correspondía hacer al Departamento de Agricultura que fue la entidad afectada por la determinación administrativa, y por lo tanto, es la entidad con legitimación activa para cuestionar esa decisión.

Por otro lado, en el señalamiento de error número quinto Díaz Alvarez alega que erró el Departamento de Recursos Naturales al permitir la continuación de los procedimientos sin la presencia de un representante del interés público nombrado por el Secretario de esa agencia. Aduce la peticionaria que de conformidad con la sección 3.3 de la Ley de Procedimiento Administrativo Uniforme, el Secretario del Departamento de Recursos Naturales había designado al licenciado Francisco J. De Jesús Annoni como representante del

preciso examinar si, como cuestión de derecho, el Departamento de

_____

interés público. Por ello, entiende que la consideración de la solicitud de la renovación del permiso no podía realizarse sin la intervención de éste.

Hemos evaluado con detenimiento los autos del caso. De ellos surge que mediante moción presentada el 24 de septiembre de 1993 ante el Departamento de Recursos Naturales, dicha agencia, a través del señor De Jesús Annoni, expresó su posición de que no era necesaria la participación de un representante del interés público. Alegó que ello resultaba oneroso parea la agencia debido a la carga de trabajo existente; la necesidad de propiciar soluciones rápidas, justas y económicas; que en el caso de autos las partes pueden representar adecuadamente sus intereses sin que sea necesario la intervención de un representante del interés público; y la ausencia de razones apremiantes que justifiquen la necesidad de un representante del interés público. Ante todo lo anterior, el Departamento destacó que la única función del Departamento debe ser la de proveerles un foro especializado en el que puedan dilucidar sus controversias y el Departamento servirles de árbitro.

Ante estos hechos, nos parece que no erró el oficial examinador y el Departamento de Recursos Naturales al continuar el procedimiento sin la presencia de un representante del interés público.

En cuanto al sexto señalamiento de error, la peticionaria argumenta que era improcedente la participación de Leovigildo Vázquez Iñino como perito de Empresas Terrassa toda vez que éste fungió como funcionario del Departamento de Recursos Naturales en la División de Permisos hasta el 1992. En este sentido, alega que su participación como perito violó el Art. 3.(c) de la Ley de Etica Gubernamental, Ley Núm. 12 de 24 de julio de 1985, 3 L.P.R.A. Sec. 1827(c), la cual dispone:

> Ningún ex servidor público [...] podrá, durante el año siguiente a la fecha de terminación de su empleo, ofrecer información, asesorar o representar en cualquier capacidad a persona alguna ante la agencia [...] para la cual el ex servidor público trabajó, respecto a aquellos casos o asuntos con los cuales el ex servidor hubiere tenido que ver directa o indirectamente mientras fue funcionario o empleado público.

Notamos que está en controversia la fecha exacta en que el señor Vázquez dejó de laborar para el Departamento de Recursos Naturales. Mientras Díaz Alvarez alega que se retiró en 1992, Empresas Terrassa sostiene que tal retiro ocurrió en 1991. Sin embargo, al examinar los argumentos de la peticionaria Díaz Alvarez, notamos que éstos sólo se circunscriben a ser una mera alegación general sin especificar cómo se configuró la violación de la Ley de Etica Gubernamental a la luz del texto precitado. Ante lo anterior, no nos hallamos en condiciones para adjudicar el alegado error.

Recursos Naturales erró al no requerirle a Empresas Terrassa la elaboración de una Declaración de Impacto Ambiental como condición para la renovación del permiso de extracción de arena.

IV.

A.

La "Ley Orgánica del Departamento de Recursos Naturales", Ley Núm. 23 de 20 de junio de 1972, según enmendada, 3 L.P.R.A. sec. 151 et seq., confiere a esta agencia la jurisdicción para regular y fiscalizar las actividades de extracción de materiales de la corteza terrestre que previamente ostentaba el Departamento de Transportación y Obras Públicas. 3 L.P.R.A. sec. 156(c). No obstante, es la "Ley de Arena, Piedra y Grava", Ley Núm. 132 de 25 de junio de 1968, según enmendada, 28 L.P.R.A. secs. 206 et seq. el estatuto que delimita el alcance de esa jurisdicción. Al respecto, confiere jurisdicción al Secretario del Departamento de Recursos Naturales sobre:

> las actividades de extracción, excavación, remoción y dragado de los componentes de la corteza terrestre llamados arena, grava, piedra, tierra, sílice, calcita, arcilla y cualquier otro componente similar de la corteza terrestre, que no esté reglamentado como mineral económico en terrenos públicos y privados. 28 L.P.R.A. sec. 206.

La sección 207 de la referida ley, por su parte, establece que para excavar, extraer, remover o dragar de los componentes de la corteza terrestre dentro de los límites geográficos del Estado Libre Asociado se requerirá un permiso expedido por el Secretario del Departamento de Recursos Naturales. La Ley, además, reconoce el derecho de la ciudadanía a participar e intervenir en los procedimientos administrativos relacionados con la otorgación o renovación de permisos de extracción de arena. Con ese fin, dispone que "[e]l Secretario celebrará vistas públicas de naturaleza

cuasijudicial si surgieran controversias u objeciones en torno a alguna solicitud y podrá convocar éstas motu proprio o a requerimiento de parte interesada". 3 L.P.R.A. sec. 208.

Finalmente, el Art. 11 de dicha ley, advierte que las determinaciones de hecho de los procedimientos "serán concluyentes si están sostenidos en evidencia sustancial". 28 L.P.R.A. sec. 215. Nada dice en torno a las conclusiones de derecho, por lo que conforme a la Ley de Procedimiento Administrativo Uniforme serán revisadas en todos sus aspectos.

De conformidad con estas disposiciones de ley, el Departamento de Recursos Naturales promulgó el "Reglamento para regir la Extracción de Material de la Corteza Terrestre", Reglamento Número 2305 del 10 de octubre de 1977, el cual detalla el procedimiento para la otorgación y renovación de los permisos de extracción de este tipo de materiales. Este Reglamento, además, establece los procedimientos administrativos que debe seguir toda persona interesada en intervenir en un procedimiento en el que se considera una solicitud de un permiso de extracción e corteza terrestre o su renovación.[7]

B.

En el caso de autos, la controversia en torno a la necesidad de elaborar una Declaración de Impacto Ambiental como prerequisito

---

[7] La sección 8.2 de este Reglamento dispone, en parte:

Toda persona natural o jurídica que desee comparecer y ser oída en relación a una solicitud de expedición de un nuevo permiso, y/o de la renovación de uno vigente, deberá radicar ante el Departamento un escrito debidamente jurado en el cual aparezcan los siguientes datos:

(a)  Nombre y dirección de la persona que desea comparecer y ser oída y de su abogado, si lo tuviese
(b)  hecho en que funda su derecho a ser oída

para obtener la renovación del permiso de extracción de arena, se enmarca en la orden administrativa 93-12, de 23 de julio de 1993, promulgada por el Secretario del Departamento de Recursos Naturales. Mediante dicha orden el Departamento de Recursos Naturales requirió la preparación de una Evaluación de Impacto Ambiental o una Declaración de Impacto Ambiental en los casos de impacto ambiental significativo o una Declaración de Impacto Ambiental No Significativo como condición para la otorgación de un permiso de extracción de materiales de la corteza terrestre.

Esta Orden Administrativa dispuso lo siguiente:

El Artículo 4 (c) de la Ley Número 9 del 18 de junio de 1970 exige el estricto cumplimiento con sus disposiciones, --"antes de efectuar cualquier acción o promulgar cualquier decisión gubernamental que afecte significativamente la calidad del ambiente...". El acto de otorgar un permiso gubernamental es una acción o decisión que pudiera requerir una Declaración de Impacto Ambiental (DIA), si se considera que pudiera afectar significativamente el ambiente.

A esos efectos, el otorgar permisos de extracción de materiales de la corteza terrestre es una actividad originada por este Departamento. Por esta razón, se deberá cumplir con el Artículo 4 (c) realizando una Evaluación de Impacto Ambiental (EA) y preparando un[a] DIA cuando el impacto sea significativo o una DIA Negativa (Determinación de Impacto Ambiental No Significativo), cuando no lo sea, como una condición previa al otorgación del permiso. La DIA negativa se radicará en la Junta de Calidad Ambiental conjuntamente con la evaluación ambiental que justificó dicha acción. La DIA Preliminar se deberá circular a la Junta de Calidad Ambiental y aquellas agencias inherentes a la acción propuesta.

[Firmado] Pedro A. Gelabert
Secretario

Apéndice de la Oposición a la Expedición del Recurso de Revisión, a la pág. 139.

De este modo, conforme a la referida Orden Administrativa toda persona que solicite un permiso de extracción de arena deberá

---

(c)    [...]

preparar un Evaluación Ambiental y, a la luz del contenido de esa evaluación, deberá preparar una Declaración Ambiental o una Determinación de Impacto Ambiental No Significativo, según sea el caso.

La señora Díaz Alvarez expresa que a la luz de este esquema, Empresas Terrassa debía cumplir con el requisito de elaborar una declaración de impacto ambiental o una declaración de impacto ambiental no significativo.

Contrario a esta pretensión, Empresas Terrassa aduce que la preparación de la Declaración de Impacto Ambiental era innecesaria. Añade que la referida Orden Administrativa fue aprobada en 1993 y la misma aplica sólo a procedimientos en los cuales serán concedidos permisos de extracción y no en procedimientos de renovación.

C.

Nuestra lectura de la precitada Orden Administrativa nos convence de que la peticionaria Día Alvarez tiene razón. No hay duda de que la intención de la Orden fue poner en vigor las disposiciones de la Ley Sobre Política Pública Ambiental al máximo grado posible en las actividades de extracción de corteza terrestre. El hecho de que la solicitud de Empresas Terrassa sea una renovación de un permiso previamente otorgado no la exime del alcance de la Orden Administrativa.

En primer lugar, los términos claros de la Orden Administrativa revelan que el criterio que sirve de fundamento para promulgarla lo es la posibilidad de que la actividad autorizada por el Departamento de Recursos Naturales en relación a la extracción de corteza terrestre pudiera afectar significativamente el

ambiente. No hay duda de que a la luz de la evidencia pericial presentada y de las propias determinaciones de hecho del oficial examinador, la renovación del permiso de extracción de arena en el caso de autos pudiera afectar significativamente el ambiente. Por ello, el hecho de que el procedimiento sea para la renovación de un permiso y no para su concesión original es impertinente.

En segundo lugar, la Orden Administrativa fue promulgada en 1993. Por su parte, el permiso de extracción de Empresas Terrassa fue originalmente expedido en 1988, previo a la vigencia de esta Orden, por lo que en ese momento la parte promovida no tuvo que elaborar una Declaración de Impacto Ambiental. Siendo ello así, la exigencia de que cumpla con las disposiciones de la orden Administrativa 93-12 para dar pleno cumplimiento a la política pública en torno al ambiente cobra mayor significado.

En tercer lugar, el efecto acumulativo de la extracción de corteza terrestre por varios años, luego de la concesión de un permiso original pudiera alterar significativamente las condiciones ambientales de un área, por lo que una determinación de que no hay un efecto ambiental significativo al momento de solicitar el permiso original pudiera alterarse dramáticamente al momento de solicitar su renovación. Ello nos convence de que la Orden Administrativa 93-12 tiene el mismo alcance al momento de evaluación una solicitud de otorgación de un permiso de extracción como al momento de evaluar una solicitud de renovación.

Por último, la Orden Administrativa del Departamento de Recursos Naturales acoge el claro mandato de la "Ley Sobre Política Pública Ambiental", Ley Núm. 9 de 18 de junio de 1970, según enmendada, 12 L.P.R.A. secs. 1121 et seq., que obliga a los

departamentos, agencias, corporaciones públicas, municipios e instrumentalidades del Estado Libre Asociado y sus subdivisiones políticas, a que incluyan con toda propuesta de legislación y antes de efectuar cualquier acción o promulgar cualquier decisión gubernamental que afecte significativamente la calidad del medio ambiente, una declaración escrita y detallada sobre el impacto ambiental de la legislación o acción propuesta. Esta Declaración de Impacto Ambiental deberá cumplir con los criterios del propio estatuto, Art. 4(c), 12 L.P.R.A. sec. 1124(c), y con lo dispuesto en el Reglamento Sobre Declaraciones de Impacto Ambiental y en el Manual para la Preparación, la Evaluación y el Uso de las Declaraciones de Impacto Ambiental. Véase, Misión Industrial de Puerto Rico, Inc. y otros v. Junta de Calidad Ambiental Opinión y Sentencia de 29 de junio de 1998, ___ D.P.R. ___ (1998).

Asimismo, la orden administrativa 93-12 es consecuente con el Art. 3 de la Ley Orgánica del Departamento de Recursos Naturales que impone a dicha agencia la obligación de implantar la fase operacional de la política pública en torno al ambiente contenida en la sección 19 del Art. VI de la Constitución del Estado Libre Asociado de Puerto Rico[8] y en la Ley Sobre Política Pública Ambiental. 3 L.P.R.A. sec. 153. De este modo, aún en ausencia de una Orden Administrativa del Departamento de Recursos Naturales que ordene la confección de la declaración de impacto ambiental, la Ley Sobre Política Pública Ambiental y la reglamentación precitada, imponen esa obligación sobre el Departamento de Recursos Naturales.

---

[8]     Dispone la Sección 19 del Art. VI de la Constitución del Estado Libre Asociado de Puerto Rico que "[s]erá política pública del Estado Libre Asociado la más eficaz conservación de sus recursos naturales, así como el mayor desarrollo y aprovechamiento de los mismos para el beneficio general de la comunidad".

A la luz de lo anterior, estimamos que antes de conceder un permiso de extracción de corteza terrestre o renovarlo, el Departamento de Recursos Naturales está obligado a dar cumplimiento a la política pública ambiental recogida en el artículo 4(c) de la Ley Sobre Política Pública Ambiental que, a su vez, fue reconocida en la Orden Administrativa 93-12 de dicha agencia.

En el presente caso, los autos revelan que Empresas Terrassa realizó una Evaluación Ambiental. Esta fue elaborada luego de que el Departamento de Recursos Naturales emitiera la Resolución que es objeto de revisión. Por lo tanto, esa agencia no contó con el beneficio de la información contenida en la evaluación ambiental antes de conceder el permiso de extracción. Como esta decisión es contraria al ordenamiento vigente, procede que la revoquemos.

Se devolverá el caso al Departamento de Recursos Naturales para que cumpla con lo dispuesto en la Orden Administrativa Número 93-12 y realice las vistas públicas que en derecho procedan.

Se emitirá la Sentencia correspondiente.


Federico Hernández Denton
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Ana Alicia Díaz Alvarez

    Recurrente



      v.                                      AT-96-22

Departamento de Recursos
Naturales

    Recurrido




SENTENCIA


San Juan, Puerto Rico, a 26 de enero de 1999.


       Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integral de la presente, se expide el auto de revisión solicitado y se revoca la Resolución emitida en el caso de epígrafe por el Departamento de Recursos Naturales, mediante la cual se autorizó la renovación de extracción de arena a la Empresa Terrassa, Inc. en el Río la Plata.

       Se devuelve el caso al Departamento de Recursos Naturales para que a tenor con lo aquí resuelto dé cumplimiento a la Orden Administrativa Núm. 93-12 y realice las vistas públicas que en derecho procedan.

       Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo.



                     Isabel Llompart Zeno
              Secretaria del Tribunal Supremo